**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1691-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SHAKEIL PRICE, a/k/a
SHAKEIL R. PRICE,
SHAKIEL R. PRICE,
SHAKEIL RACHAD PRICE,
SHAK KEIL, and SHAKEIL
RASHAD PRICE,

    Defendant-Appellant.

_____

Submitted July 9, 2024 – Decided July 17, 2024

Before Judges Natali and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 08-10-1785.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Randolph Mershon III, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Shakeil Price appeals from a November 10, 2022 Law Division order, entered following our remand, which denied his post-conviction relief (PCR) petition following an evidentiary hearing. We reversed the court's earlier order denying defendant's petition because the PCR judge failed to conduct an evidentiary hearing regarding defendant's claim his counsel was constitutionally ineffective for failing to communicate a plea offer and whether he was appropriately counseled with respect to any such offer. Satisfied the court correctly denied defendant's petition, we affirm.

## I.

The facts surrounding defendant's convictions and sentence are set forth more fully in our opinions with respect to defendant's direct appeal, State v. Price, No. A-2937-10 (App. Div. Mar. 12, 2014) (Price I); and the appeal of the denial of his petition for PCR without an evidentiary hearing, State v. Price, No. A-1527-17 (App. Div. Mar. 4, 2019) (Price II). We recite only those portions of the record necessary to place our decision in context.

2

Defendant was charged by way of indictment with the first-degree murder of Sergio Soto, N.J.S.A. 2C:11-3(a)(1) or (2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(a); and third-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a). At defendant's arraignment he was offered fifty years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for a plea to murder. He rejected the plea offer.

Defendant was subsequently convicted by a jury of "first-degree murder, N.J.S.A. 2C:11-3(a) and weapons offenses in connection with his role in the shooting death of . . . Soto." Price II, slip op. at 1. Defendant was sentenced to "a life sentence subject to an eighty-five percent period of parole ineligibility pursuant to [NERA], on the murder conviction, and concurrent ten-year prison terms with five-year parole ineligibility periods on the weapons convictions." Ibid. He "was also sentenced to a consecutive ten-year prison term, subject to a five-year parole bar, on his conviction for being a person not entitled to be in possession of a weapon, N.J.S.A. 2C:39-7(b)." Id. at 1-2.

On direct appeal, we affirmed defendant's convictions and sentences except that we remanded "for merger of the possession of a weapon for an unlawful purpose with the murder conviction." Id. at 2. The New Jersey Supreme Court denied certification. See State v. Price, 221 N.J. 219 (2015).

Subsequently, defendant filed a PCR petition, which the court denied without an evidentiary hearing. Price II, slip op. at 5. We remanded and directed the court to hold an evidentiary hearing. Id. at 11. Consistent with that instruction, the court conducted an evidentiary hearing in which the trial prosecutor, defendant's trial counsel, defendant's daughter, and defendant testified.[1]

The record reveals that, defendant filed, pro se, a motion for speedy trial or in the alternative, a dismissal. In support of the motion, defendant certified that "[o]n or about August 6[], 2009, [he] appeared . . . for a [p]re-trial [h]earing and refused any and all plea negotiations." However, defendant testified: (1) the signature on the certification was his, but then testified it was not his signature; (2) he did not write the motion, his girlfriend did; and (3) his girlfriend made up the certification.

During an April 2010 status conference, trial counsel stated "an offer was made, [he] believe[d] it was [fifty] years, and [he and defendant] declined the offer." The trial judge inquired as to what had to be completed before a trial memorandum was signed. Other than pretrial motions, the parties were prepared to move forward to trial. The trial court stated that pretrial motions would be

---

[1] Unless otherwise noted, all references to a witness' statement is from the evidentiary hearing.

A-1691-22

completed and from there defendant would "have to make one final determination as to whether or not [he] want[ed] to enter into an agreement with the State or go to trial." The judge noted that after "that point, there c[ould] be no further plea discussions."

The trial court held a Wade hearing.[2] The motion to suppress the out of court identification of defendant was denied. Defendant testified that after the Wade hearing he told trial counsel to reach out to the prosecutor regarding a plea. He stated this was the first time he asked trial counsel about a plea.

The prosecutor testified that he extended a plea offer to trial counsel whereby defendant would "plea to aggravated manslaughter, [twenty] years."[3] The prosecutor stated he may have called or spoke to defendant's trial counsel in the hallway. He recalled conveying the offer orally, not putting it in writing. The prosecutor testified defendant's trial counsel advised him that defendant

---

[2] U.S. v. Wade, 388 U.S. 218 (1967). "A Wade hearing is required to determine if [an] identification procedure was impermissibly suggestive and, if so, whether the identification is reliable." State v. Micelli, 215 N.J. 284, 288 (2013). "The trial court conducts a Wade hearing to determine the admissibility of the out-of-court identifications." Ibid.

[3] The prosecutor could not recall the precise timing of the offer, only that it was made after the Wade hearing and before the start of trial.

rejected the plea. Trial counsel testified that he had no "recollection" of a plea offer for twenty years.

Trial counsel was questioned regarding a May 29, 2010 letter that was mailed to defendant's home. Defendant's daughter testified that she discovered the letter among other items in a bin of defendant's belongings at defendant's father's home. In relevant part the letter stated:

> This will confirm that subsequent to our Wade Hearing . . . I've contacted [the] Assistance Prosecutor . . . via telephone in regards to a plea recommendation as you have requested. The State has offered the plea of twenty (20) years incarceration subject to NERA in exchange for a guilty plea to Agg[ravated] Man[slaughter]. There will be a pretrial conference conducted on July 1, 2010 . . . at which time I will discuss this matter in more detail.

Defendant testified that his father never told him about the letter, and the first time he saw it was on the first day of the evidentiary hearing.

Trial counsel stated he had "no independent recollection of having written th[e] letter." He explained that in his practice he would not have handled things in this manner. Instead, he would "go to see the [client] and . . . sit down with them, and . . . explain the offer . . . point out the pros and cons." Trial counsel had no "independent recollection" of discussing the plea deal with defendant.

6

Defendant testified trial counsel did not go to the jail to let him know about the plea offer.

The prosecutor testified that a pretrial conference was to be held in July 2022. However, he noted the conference was "[n]ot a complete one." The prosecutor recalled the trial judge did not think a pretrial conference was needed. The prosecutor did not recall if a pretrial conference with a colloquy between the judge, defendant, and trial counsel occurred.

Trial counsel testified that he "assumed" he prepared a pretrial memorandum but had no independent recollection of having done so. He was questioned about a pretrial memorandum discovered in his file. Trial counsel did not have independent knowledge of writing the memorandum, but acknowledged that it was his handwriting on the form. In addition, trial counsel stated the memorandum may have been a "practice form" and recognized the memorandum did not contain his or defendant's signatures. He assumed he signed a memorandum with defendant, but it had been so long ago he did not remember. Trial counsel acknowledged the importance of the memorandum because it "apprise[d] the . . . client of what he[ wa]s facing." Defendant testified he did not see the form until the first day of the evidentiary hearing.

A-1691-22

Trial counsel testified that throughout his representation of defendant, defendant maintained his innocence and told him he would not take a plea under any circumstances.

Defendant testified that after trial but before sentencing, trial counsel went to see him in jail. Defendant stated he mentioned to trial counsel that he had never "seen the trial papers, [or] . . . the pretrial memorandum." Defendant testified trial counsel advised him that he "was correct. Th[e] papers were unsigned, still on [trial counsel's] desk, and he told [defendant] that he declined a [twenty-year plea] . . . on [defendant's] behalf." Defendant testified that trial counsel stated, "he presumed that [defendant] was ready for trial." Trial counsel testified he had no "independent recollection" of speaking to defendant after trial about a plea offer of twenty years.

Defendant sent a letter to the court in anticipation of sentencing. Defendant's letter, in part, asserted his innocence and explained the many concerns he had with the prosecution of the matter. In addition, the letter stated he "was never afforded the opportunity for a plea agreement" and "never had a [p]re-[t]rial [c]onference." However, defendant testified the letter was written by his girlfriend, and, while he was sure they had discussions before she wrote the letter, he "did[ no]t know what the contents [of the letter] were."

8

During the sentencing hearing, defendant contended he was "not the person that killed . . . Soto."  He asserted he was not "given a fair trial" because he "never signed . . . trial papers" and "when [he] had [the] pretrial conference, [he] was never informed of how much time [he] was facing."  Defendant explained:

> I don't know if you can say that's on behalf of my lawyer for being ineffective counsel.  I haven't known any of that stuff until afterwards.  As I come to believe, that we were supposed to go over the time that I was facing for each charge and each count and in a pretrial conference, which was never done. . . .  And we never went over the plea package.  We never heard the State's last offer or anything, wasn't done.

As noted, defendant received a life sentence with an eighty-five percent parole ineligibility period pursuant to NERA for murder, concurrent ten-year prison terms with five-year parole ineligibility periods on the weapons convictions, and a consecutive ten-year prison term, with a five-year parole ineligibility period, on his conviction for being a person not entitled to be in possession of a weapon, N.J.S.A. 2C:39-7(b).  See Price II, slip op. at 1-2.

After considering the testimony of the witnesses and documentary evidence, the PCR court concluded defendant failed to satisfy both the

performance and prejudice prongs of the <u>Strickland</u> test.[4]  Significantly, in

reaching its conclusion the PCR court made detailed credibility findings with

respect to defendant and his trial counsel.  The PCR judge concluded:

> In weighing the credibility of [defendant] against that of [trial counsel], the court [wa]s unable to find [defendant] credible in this regard.  [Defendant's] testimony seemed contrived and self-serving.  While [defendant]'s bias was evident, [trial counsel] was forthcoming when admitting his failure of recollection.  Moreover, according to [defendant]'s own testimony, he colluded, or at best was complicit, with [his girlfriend] in submitting documents . . . to the court to create the false-impression that they came from him.  [Defendant]'s conviction for murder naturally also bears on his credibility.  In the end, [defendant]'s explanation of how he was informed about the State's revised plea offer lacks the ring of truth.

The PCR judge further found:

> that [trial counsel] communicated the subject plea offer to [defendant], and that [defendant] had been counseled regarding the risks of conviction and the grave potential consequences when advised by [trial counsel] of the "pros and cons," of accepting a plea, in accordance with his standard practice.  And from his arraignment until his sentence, [defendant] made it abundantly clear, at every opportunity, that he did not shoot the victim, he

---

[4]  To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), by demonstrating that:  (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense.  The <u>Strickland</u> test has been adopted for application under our State constitution.  <u>See</u> <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987).

was innocent of the charges, and he refused to accept any plea bargain. As . . . noted at the time of [defendant]'s sentence, no pretrial plea could have ever been accepted in view of petitioner's adamant claim of innocence. . . . Thus, the court also f[ound] that were there any deficiency in [trial counsel's] performance in failing to communicate the plea to [defendant], such failure would not have prejudiced [defendant].

On appeal, defendant's PCR counsel argues:

DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE TRIAL COUNSEL WAS INEFFECTIVE BY NOT INFORMING [HIM] OF THE STATE'S FINAL PLEA OFFER.

Specifically, PCR counsel asserts the judge: (1) made "clearly mistaken and . . . plainly unwarranted" findings and thus we should "make [our] own findings and conclusions"; (2) "erred in procedurally barring" PCR under Rule 3:22-4; and (3) erred in finding defendant's trial counsel's testimony credible. He contends trial counsel's "flagrant failure to inform [defendant] of the State's final plea offer mandate[d] that [defendant's] convictions be reversed."

In a pro se submission, defendant also argues:

I. THE PCR COURT ERRED WHEN IT FAILED TO ADHERE TO THE INSTRUCTIONS OF THE APPELLATE COURT'S REMAND.

II. THE PCR COURT'S REASON FOR RULING THAT DEFENDANT WAS NOT PREJUDICED BY TRIAL COUNSEL'S DEFICIENT PERFORMANCE BECAUSE HE COULD NEVER PROVIDE AN

11

ADEQUATE BASIS TO RECEIVE THE [TWENTY-]YEAR PLEA DEAL IS INCONSISTENT WITH ESTABLISHED CASE LAW.

III. THE PCR COURT ERRED IN RULING THAT DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL EVEN THOUGH A RULE-COMPLIANT PRETRIAL CONFERENCE WAS NOT CONDUCTED IN THIS MATTER.

> A. Trial Counsel's Performance was Deficient and Deprived Defendant of Due Process.
>
> B. PCR Judge's Understanding of the Law Surrounding R[ule] 3:9-1(f), and the Appropriate Remedy is Flawed.

More specifically, defendant contends there was no dispute a plea offer of twenty years was made to trial counsel; trial counsel "had no specific recollection of discussing [the] plea" with defendant; and defendant testified trial counsel never told him about the plea. Thus, defendant argues the PCR judge "expressed [hi]s decision based upon a palpably incorrect or irrational basis, and it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Defendant also argues trial counsel's failure "to advise [him] of a plea bargain constitute[d] a gross deviation from accepted professional standards." In addition, defendant

12

contends trial counsel's failure prejudiced him because "he would have pleaded guilty in exchange for a substantially lesser sentence."

Moreover, defendant contends the PCR judge erred in concluding defendant was not prejudiced because he had maintained his innocence. Instead, defendant argues he was "entitled to maintain his innocence throughout" and maintaining innocence "has never been a bar to a defendant later admitting guilt under oath at a plea proceeding." Defendant notes his "interest in proceeding to trial was rooted in insufficient information gleaned from [trial] counsel's faulty advice." In addition, defendant contends he was entitled to PCR because his "right to due process was violated when neither a [p]retrial [c]onference nor a [p]retrial [m]emorandum were prepared pursuant to R[ule] 3:9-1(f)."

## II.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420.

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. See Nash, 212 N.J. at 541; State v. Preciose, 129 N.J. 451, 459 (1992). As noted, to establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced their right to a fair trial. See Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Further, because prejudice is not presumed, Fritz, 105 N.J. at 52, the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding, U. S. v. Cronic, 466 U.S. 648, 659 n.26 (1984).

"The United States Supreme Court has applied the Strickland test to challenges of guilty pleas based on ineffective assistance of counsel." State v.

14

DiFrisco, 137 N.J. 434, 456 (1994); see Hill v. Lockhart, 474 U.S. 52, 58 (1985). When a guilty plea is contested, counsel's performance is not deficient if "a defendant considering whether or not to plead guilty to an offense receives correct information concerning all of the relevant material consequences that flow from such a plea." State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012) (citing State v. Nunez-Valdez, 200 N.J. 129, 138 (2009)).

Applying these well-established principles, we are convinced defendant failed to establish by the preponderance of the evidence a right to PCR. We are satisfied the PCR judge's findings of fact were supported by substantial and credible evidence in the record. Moreover, recognizing our deference to the PCR judge's credibility determinations, we accept his finding that trial counsel's testimony was more credible than defendant's testimony. Thus, trial counsel's representation of defendant was not ineffective because he communicated the subject plea offer to defendant, and defendant had been counseled regarding the risks of conviction and the consequences of accepting a plea. See Agathis, 424 N.J. Super. at 22. In addition, satisfied trial counsel's representation was effective, defendant cannot establish prejudice under the second prong of DiFrisco. Therefore, defendant's petition for PCR was properly denied.

A-1691-22

Furthermore, defendant argues trial counsel rendered ineffective assistance of counsel because he did not object to the trial court's failure to comply with <u>Rule</u> 3:9-1(f). We disagree. In doing so, we in no respect undervalue the importance of <u>Rule</u> 3:9-1(f) or excuse the trial court's lack of compliance therewith, but we are satisfied defendant failed to establish trial counsel's failure to object to the trial court not holding a pretrial conference prejudiced him.

As noted, the PCR judge concluded trial counsel fulfilled his responsibility to defendant and informed defendant of the plea offer and the consequences of accepting or rejecting the offer. Thereafter, the matter proceeded to trial, revealing defendant rejected the offer. Under these circumstances, the lack of a pretrial conference resulted in no prejudice because defendant was advised of the information required by the <u>Rule</u>.

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1691-22